FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ JUN 1 0 2010 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x

ALICIA COLON,

 CV10- 2661

Plaintiff,

COMPLAINT

-against-

Jury Trial Demanded

THE CITY OF NEW YORK, POLICE OFFICER
WILLIAM RYAN (Shield No. 30855), POLICE OFFICER
JOHN DOE

AMON, J.

Defendants.

-------------------------------------------------------------- x

GOLD, M.J.

## PRELIMINARY STATEMENT

1.      This is a civil rights action, brought pursuant to 42 U.S.C. § 1983, alleging

misconduct by the City of New York and two of its police officers.  Plaintiff alleges that, on

December 3, 2009, Officers William Ryan and John Doe subjected plaintiff to false arrest,

excessive force and fabricated evidence in violation of the Fourth, Sixth and Fourteenth

Amendments to the Constitution and New York common law.  Plaintiff seeks compensatory and

punitive damages, declaratory relief, an award of costs and attorney's fees, and such other and

further relief as the court deems just and proper.

## JURISDICTION & VENUE

2.      This action is brought pursuant to 42 U.S.C. § 1983 and the Fourth, Sixth

and Fourteenth Amendments to the United States Constitution.  Jurisdiction is conferred upon

this Court by 28 U.S.C. §§ 1331 and 1343.

3.      Venue is proper in the Eastern District pursuant to 28 U.S.C. § 1391(b)

and (c) because defendant City of New York is subject to personal jurisdiction in this District.

Moreover, venue is proper here pursuant to 28 U.S.C. § 1391(b) because the incidents at issue in this lawsuit took place in Brooklyn, which is within the confines of the Eastern District.

## PARTIES

4.    Plaintiff is a resident of the State of New York.

5.    The City of New York is a municipal corporation organized under the laws of the State of New York.

6.    Police Officer William Ryan is a member of the New York City Police Department ("NYPD") who was involved in the arrest of plaintiff, and the torts arising out of plaintiff's arrest, on December 3, 2009.    Ryan is liable for directly participating in the acts described herein and for failing to intervene to protect plaintiff from the illegal conduct of his fellow officers. Ryan is sued in his individual capacity.

7.    Police Officer John Doe is a member of the NYPD who was involved in the arrest of plaintiff, and the torts arising out of plaintiff's arrest, on December 3, 2009.  Doe is liable for directly participating in the acts described herein and for failing to intervene to protect plaintiff from the illegal conduct of his fellow officers.  Doe is sued in his individual capacity.

## STATEMENT OF FACTS

8.    Plaintiff is a thirty-two year-old woman.  This was her first arrest.  On December 3, 2009, at approximately 10:15 a.m., plaintiff was walking towards the subway station when she was stopped by Officers Ryan and Doe and asked for identification.  Plaintiff provided identification.

2

9.     One of the Officers accused plaintiff of entering 335 Sutter Avenue. Plaintiff had not entered 335 Sutter Avenue.  Plaintiff resides at 301 Sutter Avenue, a building in the same complex as 335 Sutter Avenue.

10.     Despite plaintiff's lack of culpable conduct, the officers placed plaintiff in excruciatingly tight handcuffs and took her to the 75th Precinct.  Once at the precinct plaintiff was taken to a private area where her body, including her breasts and genital region, were examined.

11.     The officers conspired to falsely arrest plaintiff for trespassing in a building operated by the New York City Housing Authority.  At about 2:00 p.m. plaintiff was given a desk appearance ticket and released.

12.     After numerous court appearances, plaintiff received an ACD.

13.     As a result of defendants' actions, plaintiff suffered pain and injury, emotional distress, mental anguish, fear, embarrassment, humiliation, discomfort, damage to reputation.

## PLAINTIFF'S FEDERAL CLAIMS AGAINST DEFENDANTS WILLIAM RYAN AND JOHN DOE

14.     Plaintiff repeats and realleges the allegations contained in ¶¶ 1-15 as if fully set forth herein.

15.     The conduct of defendants Officers William Ryan and John Doe, as described herein, amounted to false arrest, excessive force and fabrication of evidence in violation of 42 U.S.C. § 1983 and the Fourth, Sixth, and Fourteenth Amendments to the United States Constitution.

3

## PLAINTIFF'S FEDERAL CLAIM AGAINST
THE CITY OF NEW YORK

16.     Plaintiff repeats and realleges the allegations contained in ¶¶ 1-18 as if fully set forth herein.

17.     The City of New York directly caused the constitutional violations suffered by plaintiff.

18.     Upon information and belief, the City of New York, at all relevant times herein, was aware from notices of claim, lawsuits, complaints filed with the City, and from the City's own observations, that many of its police officers, including the individual defendants, are unfit officers who have the propensity to commit the acts alleged herein. Nevertheless, the City of New York exercised deliberate indifference by failing to take remedial action. The City failed to properly train, retrain, supervise, discipline, and monitor the officers and improperly retained and utilized them. Moreover, upon information and belief, the City of New York failed to adequately investigate prior complaints filed against the officers.

19.     Moreover, The City of New York has implemented and continues to conduct, enforce and sanction an unlawful vertical patrol and trespass arrest policy which has resulted in a pattern and practice of illegal stops, seizures, questioning, searches, and false arrests of authorized visitors to NYCHA residences.

20.     The NYPD first implemented vertical patrols in 1991. The protocol was adopted to address crime, and specifically drug activity, in NYCHA residences. It is considered an "important component of the [NYPD]'s drug control strategy." (NYPD Patrol Guide Procedure 212-59).

4

21.     In the course of a vertical patrol, multiple NYPD officers approach anyone they observe in the common areas of a building or to affirmatively establish a connection to a specific building resident.  If an individual stopped and seized pursuant to a vertical patrol fails to identify himself to the satisfaction of the officer, or is unable to demonstrate to the satisfaction of the officer, that he or she is going to, or coming from, a visit to s resident or his or her own home, he or she is arrested for trespass.   If the individual has not already been searched for contraband pursuant to the seizure, they are subjected to a search for contraband pursuant to their arrest.

22.     The NYPD's policy amounts to a roving pedestrian checkpoint wherein NYPD officers indiscriminately stop, seize, question, and even search individuals in the common areas of NYCHA residences in the absence of individualized objective facts.

23.     In 2005, the NYPD Housing Bureau alone conducted approximately 181,000 vertical patrols in NYCHA residences, and an average of 142,000 annually over the previous six years.  *Testimony of Chief Joanne Jaffe, NYPD Housing Bureau,* New York City Council Committee on Public Safety and Subcommittee on Public Housing (November 2, 2006) at 24.   These figures underestimate the actual number of vertical patrols, however since NYPD officers outside of the Housing Bureau also patrol NYCHA residences, also conduct vertical patrols in NYCHA residences, and also arrest people for trespass in NYCHA residences.

24.     In addition to directed or organized vertical sweeps in NYCHA residences, NYPD officers also sweep NYCHA residences for alleged trespassers on an informal basis.

25.     Trespassing in public housing is a Class B misdemeanor under subsection (e) of NYPL Section 140.10, which was enacted in 1992, shortly after the inception of the vertical program (L. 1992 ch. 434).

26.     The number of trespass arrests in NYCHA residences has surged.  The City has not provided any legitimate and neutral explanation for this rise in the arrest rate.

27.     The NYPD Patrol guide on vertical patrol provides NYPD officers no guidance on who is to be stopped, seized, questioned, searched or arrested for trespass.  It simply directs uniformed patrol officers to "take note of unauthorized persons remaining in lobbies, basements, staircases and    roof landings and take appropriate police action when necessary." (NYPD Patrol Guide 212-60).  Yet the vertical patrol provision contains no criteria for determining who is - and who is not - an "unauthorized person."

28.     The vertical patrol policy and trespass arrest practices implemented by NYPD officers fails to require that an arresting officer act upon observed behavior that reliable differentiates a suspected trespasser or "unauthorized person" in a NYCHA hallway from a lawful visitor in transit, or a building resident enjoying the common areas of his home.  Given the large number of people legally permitted in a NYCHA residence, a police officer who is unfamiliar with the building residents and visitors cannot consistently or reliably differentiate between a suspected trespasser and a building resident enjoying the common areas of his home. Given the large number of people legally permitted in a NYCHA residence, a police officer who is unfamiliar with building residents and visitors cannot consistently or reliable differentiate between a suspected trespasser and a building resident, visitor, permittee, or licensee based on this policy.

6

29.     Defendant's failure to provide adequate guidance, training, and support to NYPD officers regarding how to conduct vertical patrols, including whom to stop, question, seize, search and arrest for trespass, results in a *de facto* roving checkpoint and a pattern and practice of unlawful stops and seizures.

30.     The only guiding principles provided to NYPD officers are consistent with, and reflective of, a policy, practice and custom of reckless arrests based on less than probable cause.

31.     Under this policy, as written, people are or can be arrested for trying to visit someone who is not at home based solely on their mere presence in or around a NYCHA residence. People are also arrested in instances in which they know only their friend's first name or "street" name, or only know the apartment by the location rather than the number. Individuals who remain silent upon questioning for trespass by NYPD officers are subject to arrest. this is even true if the only basis for the NYPD's questioning is the presence of that individual in a NYCHA common area.

32.     Defendant's vertical patrol policy and trespass arrest practices, even if diligently followed, cause a pattern and practice of false arrests of many people who are lawfully on the premises. Without probable cause to suspect criminal activity, the individual is forced to defeat a presumption of guilt with the presentation of documents or witnesses at the time of arrest.

33.     In addition to screening for suspected trespassers, another purported purpose of the vertical patrol program and trespass arrest practices is to screen and police NYCHA residents themselves. According to Inspector Michael C. Phipps, Commanding Officer,

7

Housing Bureau Manhattan, the NYPD has the authority to arrest building residents and charge them with second degree trespass for entering certain areas of their own building, "namely, the roof landings, the rooftops, the store rooms, maintenance areas and basements." Testimony of Insp. Michael C. Phipps, New york City Council Committee on Public Housing (April 29, 2004) at 24 (Phipps Testimony"). Inspector Phipps testified that "[w]hen tenants sign lease agreements with the Housing Authority, they are advised not to enter" these areas in their buildings. *Id.*

34.    In fact, NYCHA leases do not contain any such clause. A NYCHA lease merely provides that, when given proper notice, tenants must comply with all lawful rules and regulations promulgated by the Landlord. For example, signs posted in or around lobbies of NYCHA residences, if any, may state "No Trespassing" or "Loitering and trespassing in lobby, roof, hallway and stairs is not permitted. Violators are subject to arrest and prosecution by the Police Department."

35.    Trespassing is an offense which requires that a person unlawfully enter or remain in a prohibited area. There is no law prohibiting a resident's mere presence in or around the stairwells, hallways, roofs, or roof landings in his or her own apartment building. Indeed, there could be no lawful regulation or notice provision prohibiting entirely a resident's mere presence in his or her own hallway or stairwell.

36.    Loitering also requires a specified unlawful purpose for being present at a location, such as "begging," P.L. section 240.35(1); gambling, P.L. section 240.35(2); sexual conduct P.L. section 240.35(3); possessing a controlled substance, P.L. section 240.36 or engaging in prostitution, P.L. section 240.37.

8

37.    Thus, there is no legal basis for wholesale stopping. seizing, questioning, searching and arresting individuals for mere presence in lobbies, roofs, hallways, and stairwells in and around NYCHA residences.    Yet defendant has enforced, promoted, encouraged and sanctioned these customs and practices.

38.    The City has failed to supervise and discipline NYPD officers who unlawfully stop, question, seize, search, and arrest individuals for trespass.  On information and belief, Defendant does not monitor improper stops, seizures, and searches for trespass.  Nor has the Defendant instituted any follow up procedure or disciplinary action when charges are dismissed or where it is otherwise established that an individual was arrestee without probable cause.

39.    The aforesaid conduct by the City of New York violated plaintiff's rights under 42 U.S.C. § 1983 and the Fourth, Sixth and Fourteenth Amendments to the United States Constitution.

WHEREFORE, plaintiff demands a jury trial and the following relief jointly and severally against the defendants:

a.    Compensatory damages in an amount to be determined by a jury;

b.    Punitive damages in an amount to be determined by a jury;

c.    Costs, interest and attorney's fees;

d.    Such other and further relief as this Court may deem just and proper, including injunctive and declaratory relief.

DATED:    June 7, 2010
New York, New York

9

Robert Marinelli
305 Broadway, 14th Floor
New York, New York 10007
(212) 822-1427

By:

_____
ROBERT MARINELLI (RM-4242)

10